**RICHARD R. BEST**
**REGIONAL DIRECTOR**
**Sanjay Wadhwa**
**Adam S. Grace**
**Paul G. Gizzi**
**Brenda Wai Ming Chang**
**John C. Lehmann**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**Brookfield Place**
**200 Vesey Street, Suite 400**
**New York, New York 10281-1022**
**212-336-0077 (Gizzi)**
**Email: gizzip@sec.gov**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **COMPLAINT** |
| Plaintiff, | 21 Civ. _____ (    ) |
| -against- | |
| **GPL VENTURES LLC,** **GPL MANAGEMENT LLC,** **ALEXANDER J. DILLON,** **COSMIN I. PANAIT,** **HEMPAMERICANA, INC.,** **SALVADOR E. ROSILLO,** **SEASIDE ADVISORS, LLC, and** **LAWRENCE B. ADAMS,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendants GPL Ventures LLC ("GPL Ventures"), GPL Management LLC ("GPL

Management"), Alexander J. Dillon ("Dillon"), Cosmin I. Panait ("Panait" and, together with

GPL Ventures, GPL Management, and Dillon, the "GPL Defendants"), HempAmericana, Inc.

("HempAmericana"), Salvador E. Rosillo ("Rosillo"), Seaside Advisors, LLC ("Seaside"), and Lawrence B. Adams ("Adams") (collectively "Defendants"), alleges as follows:

## SUMMARY

1.  The Commission brings this emergency action to halt the GPL Defendants' ongoing violations of the dealer registration requirements of the federal securities laws.

2.  Since at least early 2017 and continuing to the present, the GPL Defendants have been acting as unregistered dealers by privately acquiring large blocks of stock in approximately 140 microcap issuers and publicly selling those blocks into the market for their own account, generating gross proceeds of at least $81 million.

3.  Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)] makes it illegal for a broker or dealer to use the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security unless the broker or dealer, absent an applicable exemption, is either registered with the Commission or is a natural person associated with a registered broker or dealer. Scienter is not required to violate this provision of the securities laws.

4.  None of the GPL Defendants is registered with the Commission, and neither Dillon nor Panait is associated with a registered broker or dealer.

5.  As such, the GPL Defendants' conduct constitutes an ongoing violation of the dealer registration requirements, and emergency relief in the form of a temporary restraining order and preliminary injunction against such continued violation is necessary to prevent further harm to investors.

6.      In addition, an asset freeze, accountings, and other emergency relief is required to preserve the *status quo* and prevent the dissipation of assets. The GPL Defendants have been using a broker in the Cayman Islands, and GPL has an account held with a financial firm in Canada, containing millions of dollars in cash and securities. Moreover, according to brokerage records, Panait is a Romanian citizen and, therefore, may be particularly well-positioned to transfer assets overseas.

7.      In addition to the emergency action to halt the GPL Defendants' ongoing dealer registration violations, the Commission charges all Defendants with securities fraud in connection with a fraudulent course of conduct involving the stock of HempAmericana.

8.      As part of their ongoing dealer registration violations, the GPL Defendants are secretly funding promotional activity in microcap issuers whose stock they trade. This illegal conduct is known as "scalping."

9.      A Defendant "scalps" when that Defendant (i) acquires shares of a stock for his own benefit prior to recommending or touting that very stock to others, (ii) does not disclose in the tout the full details of his ownership of the shares and his plans to sell them, and (iii) proceeds to sell his shares following the tout's dissemination, and into the share price and trading volume increases triggered by his touting.

10.     The GPL Defendants' scalping activities included buying and selling large blocks of HempAmericana securities from 2017 through at least late 2019. HempAmericana was one of the GPL Defendants' most profitable scalping schemes, generating profits of approximately $11 million.

11.     The GPL Defendants provided funding to HempAmericana in exchange for its stock. The GPL Defendants required that HempAmericana and its CEO, Rosillo, split the offering proceeds with Seaside. As a result, Rosillo transferred funds to Seaside and its CEO,

Adams, as well as to another individual, to finance the GPL Defendants' covert promotional activities.

12.     HempAmericana provided misleading public disclosures about its use of the funds received from the GPL Defendants. Seaside and Adams, as well as another individual, hired others to promote HempAmericana. Those promotions failed to disclose that the GPL Defendants funded the promotions, and failed to disclose that the GPL Defendants intended to sell HempAmericana stock at the same time that Seaside and Adams were paying promoters to recommend that investors purchase the stock.

13.     The GPL Defendants also committed securities fraud by lying to broker-dealers about their involvement in the scalping scheme.

14.     Finally, HempAmericana and Rosillo committed securities fraud by filing false Regulation A ("Reg. A") offering circulars with the Commission.

## VIOLATIONS

15.     By virtue of the foregoing conduct and as alleged further herein: (i) the GPL Defendants have violated Exchange Act Section 15(a) [15 U.S.C.§ 78o(a)] and, in the alternative, Dillon and Panait are liable as control persons for GPL Ventures' and GPL Management's violations of Exchange Act Section 15(a) [15 U.S.C. § 78o(a)] under Exchange Act Section 20(a) [15 U.S.C. § 78t(a)]; (ii) the GPL Defendants, HempAmericana, and Rosillo have violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and (iii) Seaside and Adams have violated Securities Act Sections 17(a)(1) and (3) [15 U.S.C. §§ 77q(a)(1) and (3)], and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

16.     Unless Defendants are restrained and enjoined, Defendants will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

17.     The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

18.     To maintain the *status quo* and to preserve assets sufficient for the GPL Defendants to pay disgorgement, prejudgment interest, and civil penalties in accordance with any final judgment of this Court, the Commission seeks emergency relief during the pendency of this action, including: (a) a temporary restraining order and a preliminary injunction against the GPL Defendants prohibiting them from acting as unregistered dealers or otherwise violating Exchange Act Section 15(a) [15 U.S.C. § 78o(a)], including but not limited to by buying and selling blocks of securities of microcap issuers for their own account; and (b) an order (i) freezing the GPL Defendants' assets, (ii) requiring the GPL Defendants to repatriate funds and other assets now located outside the United States; (iii) requiring GPL Ventures and GPL Management to provide the Commission with sworn accountings, (iv) granting the Commission expedited discovery, (v) prohibiting the GPL Defendants from destroying, altering, or otherwise disposing of relevant documents, and (vi) permitting service by alternative means, including service on the GPL Defendants or their counsel by email.

19.     The Commission seeks a final judgment: (a) permanently enjoining Defendants from violating the federal securities laws this Complaint alleges they have violated; (b) ordering Defendants to disgorge all ill-gotten gains and/or unjust enrichment received as a result of the

violations alleged herein and to pay prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)]; (c) ordering Defendants to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; (d) permanently prohibiting Rosillo and Adams from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78*l*] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; (e) permanently prohibiting the GPL Defendants, Rosillo, Seaside, and Adams from participating in any offering of a penny stock, pursuant to Securities Act Section 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and (f) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].

21.     Defendants, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

22.     Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa]. Defendants may be found in, are inhabitants of, or transact business in the Southern District of New York, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District. For example, GPL Ventures, GPL Management, and HempAmericana are based in this District, and Panait and Rosillo reside in this District.

**DEFENDANTS**

23.     **GPL Ventures** and **GPL Management** are both incorporated in Delaware, with headquarters in New York, New York.  GPL Ventures and GPL Management are in the business of privately acquiring and publicly selling the securities of microcap issuers.  The securities are acquired in the account of GPL Ventures, and GPL Management provides operational support for their business.

24.     **Dillon**, age 32, resides in Closter, New Jersey.  He and Panait co-own and control GPL Ventures and GPL Management, through which they invest in microcap companies.  Dillon previously held a Series 7 securities license, and was briefly employed at a registered broker-dealer from April 2013 to July 2013.

25.     **Panait**, age 35, resides in New York, New York and is a Romanian citizen.  He and Dillon co-own and control GPL Ventures and GPL Management, through which they purportedly invest in microcap companies.

26.     **HempAmericana** (ticker OTC BB: HMPQ), is incorporated in Delaware and headquartered in New York, New York.  HempAmericana purports to research, develop, and sell products made of industrial hemp, including canabidiol, or CBD, oil.  On June 12, 2015, HempAmericana filed a certification and notice of termination of registration under Exchange Act Section 12(g) [15 U.S.C. § 78*l*(g)] or suspension of duty to file reports under Exchange Act Sections 13 and 15(d) [15 U.S.C. § 78m and 78o(d)].

27.     **Rosillo**, age 84, resides in New York, New York.  He is the CEO of HempAmericana.

28.     **Seaside** is incorporated in New Jersey, with its headquarters in Rumson, New Jersey.  Seaside is a consulting firm for various microcap companies that purportedly assists

with, among other things, marketing, public relations, and general business advice.

29.     **Adams**, age 66, resides in Rumson, New Jersey. Adams owns Seaside and is also the CEO of a microcap issuer, Image Protect Inc. (ticker OTC: IMTL).

## FACTS

## I.     STATUTORY FRAMEWORK FOR DEALER REGISTRATION

30.     As alleged below, the GPL Defendants violated the broker-dealer registration requirements of Exchange Act Section 15(a) [15 U.S.C. § 78o(a)] by engaging in the business of acquiring large blocks of numerous microcap issuers' stock and, after depositing the shares with their brokers, selling such blocks for their own accounts into the market as quickly as possible, depending on the liquidity in the shares resulting from the GPL Defendants' funded promotions. Exchange Act Section 15(a) [15 U.S.C. § 78o(a)] makes it illegal for a broker or dealer to use the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security unless the broker or dealer, absent an applicable exemption, is either registered with the Commission or is a natural person associated with a registered broker or dealer. Scienter is not required for a violation of Exchange Act Section 15(a) [15 U.S.C. § 78o(a)].

31.     Exchange Act Section 3(a)(5)(A) [15 U.S.C. § 78c(a)(5)(A)] defines "dealer" generally as "any person engaged in the business of buying and selling securities . . . for such person's own account through a broker or otherwise." Exchange Act Section 3(a)(5)(B) [15 U.S.C. § 78c(a)(5)(B)] excludes from the definition of "dealer" any "person that buys and sells securities . . . for such person's own account, either individually or in a fiduciary capacity, but not as part of a regular business."

32.     Determining whether a person is acting as a dealer is a fact-specific inquiry and

involves a two-prong analysis of whether the person: (1) buys and sells securities for its own

account, and (2) engages in those activities as part of a regular business.

## II.     THE GPL DEFENDANTS ARE IN THE BUSINESS OF REGULARLY BUYING AND SELLING SECURITIES FOR THEIR OWN ACCOUNT

33.     The GPL Defendants' business is privately acquiring discounted shares of

microcap issuers and then selling those shares into the market.

34.     Dillon and Panait coordinate and authorize all of GPL Ventures' and GPL

Management's stock trading.

35.     The GPL Defendants arrange for cold-callers to pitch GPL Ventures to publicly

traded microcap issuers, offering capital infusions, purportedly to support the issuers' operations.

36.     At times, other services are pitched or provided, such as installing an "investor

relations" firm, or introducing an in-house accountant to assist with preparing the issuers'

financial statements.

37.     Once an issuer agrees to be funded, the GPL Defendants acquire large blocks of

the issuer's unrestricted stock at a steep discount, either by: 1) purchasing aged convertible notes

from the issuer's debtholders, which notes the GPL Defendants then convert into shares; or 2)

purchasing shares directly from the issuer through qualified Reg. A offerings.

38.     The GPL Defendants generally sell newly acquired shares into the market before

purchasing new blocks in the same issuer.

39.     Since at least early 2017 and continuing to the present, the GPL Defendants have

acquired and sold stock of approximately 140 microcap issuers pursuant to their business model.

40.     The GPL Defendants' ongoing business is a multi-million dollar enterprise, with

their stock sales generating gross proceeds of at least $81 million.

### III.    THE HEMPAMERICANA SCALPING SCHEME

41.    HempAmericana was one of the GPL Defendants' most profitable scalping schemes, generating a profit of approximately $11 million.

42.    The HempAmericana scalping scheme is illustrative of the GPL Defendants' broader conduct in ensuring that they can profitably sell the stock acquired of troubled issuers – not by virtue of financing companies that become successful in their operations, but by virtue of financing opaque and far-reaching promotional campaigns.

43.    The HempAmericana scheme can be summarized as follows:  (1) the GPL Defendants repeatedly acquired stock purportedly sold pursuant to the Reg. A registration exemption, conditioned on a portion of the stock sales proceeds being sent by the issuer to Seaside; (2) Seaside then paid Individual A, a professional stock promoter; (3) Individual A hired promoters, or middlemen, who in turn hired other promoters, to promote the stock; (4) the GPL Defendants sold the stock during the promotional campaigns, which did not disclose that the promotions were indirectly funded by the issuer, HempAmericana, using the proceeds received from the GPL Defendants, the most significant purchaser in the issuer's qualified Reg. A offerings, or that the GPL Defendants intended to sell their large stock holdings during the promotion.

44.    Additionally, in order to deposit and sell their HempAmericana shares, the GPL Defendants falsely told their brokers that they were not involved in the promotional activity.

45.    Further, the "Use of Proceeds" representations in HempAmericana's Reg. A offering circulars misleadingly failed to mention that significant portions of the stock sales proceeds would be used for stock promotion.

### A.  The GPL Defendants' Share Acquisitions in HempAmericana

46.     HempAmericana is a struggling microcap CBD company with a factory and equipment aimed at processing, bottling, and selling hemp-based products.

47.     Since its incorporation in February 2014, HempAmericana has never been profitable.

48.     From 2017 through May 2020, HempAmericana generated a mere $9,727 in revenues.

49.     Disclosure statements filed on OTCMarkets' website have noted that the company must raise funds in order to finance operations.

50.     HempAmericana has not filed financial information with OTCMarkets since July 2020, and is currently quoted with a "STOP" sign, a designation used by OTCMarkets to indicate companies "that may not be able or willing to provide current disclosure to the public markets."

51.     Shortly after HempAmericana's first Reg. A capital raise was qualified on June 29, 2017, HempAmericana's CEO, Rosillo, began issuing unrestricted Reg. A shares to the GPL Defendants.

52.     From July 2017 to November 2019, a period when the GPL Defendants were particularly active in HempAmericana, the GPL Defendants sequentially acquired the majority of the unrestricted shares issued by HempAmericana.

53.     As alleged further below, all the Defendants understood that Dillon, who was in charge of overseeing the HempAmericana scheme, would only purchase additional tranches of shares in the Reg. A offerings if the GPL Defendants could successfully sell their existing shares into the market.

54.     The Reg. A offering circulars that Rosillo and HempAmericana filed with the Commission, along with offering statements on Forms 1-A, indicated that the capital raised would be used "to grow its business."

55.     Rosillo and HempAmericana failed to disclose that significant percentages of the offering proceeds were going to be used to promote the stock, and failed to disclose that the promotion was designed to allow its biggest stock purchaser (*i.e.,* the GPL Defendants) to profit from selling their stockholdings.

**B.  The GPL Defendants Installed Seaside to Promote HempAmericana**

56.     The GPL Defendants conditioned their investment in HempAmericana on the company hiring Seaside to promote the company's stock.

57.     To this end, Dillon introduced Rosillo to Adams and Individual A, and required that Rosillo hire Seaside as a "consultant" with the express understanding that Seaside, in turn, would sub-contract Individual A to undertake a wide-ranging promotional campaign to enable the GPL Defendants to sell their shares at a profit.

58.     While HempAmericana publicly disclosed retaining Seaside as a consultant, Adams' use of Individual A had the effect of distancing HempAmericana and the GPL Defendants from the funding of the promotional activity.

59.     Early on in the scheme, the GPL Defendants directed the specific split of offering proceeds between HempAmericana and Seaside.

60.     For example, in August 2017, when the GPL Defendants purchased 16 million shares of stock for $80,000, the funds went to a HempAmericana escrow account from which Dillon then provided instructions for $50,000 to be sent to HempAmericana and $30,000 to be sent to Seaside.

### C.  Seaside Made Payments to Individual A as Part of the Promotion

61.     Once Seaside received the GPL Defendants' money through HempAmericana, it forwarded varying amounts, but generally more than half, to Individual A for promotional activity.

62.     Overall, of the $7.4 million in stock purchase proceeds that the GPL Defendants paid to HempAmericana during the scheme, $2.18 million was paid by HempAmericana to Seaside, and Seaside in turn forwarded nearly sixty percent of it to Individual A.

63.     Individual A was in direct communications with both Rosillo and the GPL Defendants, and Dillon and Rosillo were fully aware of Individual A's role in promoting HempAmericana stock.

64.     For example, in May 2019, Adams assured Individual A that Individual A would be compensated for his promotional efforts, but the funds could not come directly from HempAmericana's escrow account because the GPL Defendants' brokerage firm would not permit it so the funds would instead come from Rosillo.

65.     In June 2019, in reference to the GPL Defendants' budget for promotions, Dillon indicated that he understood Individual A and Adams to be one and the same, and that he understood they split the money.

### D.  Individual A Funded Promotions of HempAmericana Using False Disclaimers

66.     Individual A used HempAmericana's proceeds from the GPL Defendants' stock purchases to hire people to promote the stock.

67.     Individual A used two kinds of promoters.

68.     First, he hired people whom he understood to have email lists or social media mechanisms that would enable them to get buyers into the stock, apparently with the promise of

buying cheaper stock in advance of the promotion.

69.     Second, he hired people who would in turn pay others to engage in more traditional promotional activity during the actual "pump."

70.     As an example of how the scheme unfolded, in January 2018, the GPL Defendants purchased $170,000 of HempAmericana stock. $70,000 of the sales proceeds went to Seaside, and $55,000 of that amount went to Individual A, who in turn paid an entity, "Entity A."

71.     Later that month, another entity, "Entity B," put out email blasts promoting HempAmericana stock and disclosing that it was compensated by Entity A, which was described as a non-affiliated third party.

72.     The promotion's disclaimer said that Entity B did not own any shares in HempAmericana and made no reference to anyone intending to sell shares into the promotion.

73.     Individual A's hiring of such intermediaries further insulated the GPL Defendants from any apparent connection to the promotional campaign.

74.     The promotions failed to disclose either HempAmericana or the GPL Defendants as the ultimate source of funding for the promotions.

75.     Nor did the promotions disclose Seaside's and Individual A's roles in facilitating payment from the GPL Defendants to downstream promoters – or that Seaside and Individual A were actually affiliated with and assisted by the issuer, HempAmericana.

76.     The promotions were silent as to the actual intentions of the GPL Defendants, the ultimate funder of the promotions, to sell out their shares in the promotion.

77.     While some disclosures included a boilerplate statement that the funder, issuer, or their affiliates "likely wish to liquidate shares of the profiled company," the statements were

misleading because the GPL Defendants' intent at the outset of investment was for HempAmericana to funnel significant proceeds from the GPL Defendants' investment to promoters to enable the GPL Defendants to sell their stock and then reinvest in HempAmericana for subsequent rounds of scalping.

### E.  The GPL Defendants' Stock Sales Coincided with the Promotion

78.     The HempAmericana scalping scheme was very lucrative for the GPL Defendants.

79.     The GPL Defendants paid $7.4 million to acquire more than 1.5 billion shares of HempAmericana stock and, in conjunction with Individual A's promotional activity, they sold the shares for more than $18.4 million, for approximately $11 million in illegal profit.

80.     Individual A generally kept Dillon apprised of the promotions, advising on when the buying volume would increase and on the strategy for selling the stock.

81.      On at least one occasion, Individual A requested that Dillon sell some stock into the market at a lower price (pre-promotion) to enable Individual A's "guys," *i.e.,* his sub-promoters, to get in the stock more cheaply due to an apparent shortfall in Individual A's spending for promotion.

## IV.    DILLON AND PANAIT MADE FALSE STATEMENTS TO THEIR BROKERS

82.     Throughout the period of the HempAmericana scalping scheme, the GPL Defendants' broker-dealers repeatedly requested affirmations as to whether the GPL Defendants were involved in stock promotions when the GPL Defendants sought to deposit and sell the shares that were obtained from HempAmericana and other issuers.

83.     Dillon and Panait repeatedly provided false assurances to their broker-dealers that the GPL Defendants were not involved in any promotional activity.

84.     For example, in connection with their requests to deposit HempAmericana shares, both Dillon and Panait signed numerous deposit request forms for a broker-dealer, Broker-Dealer A, in which they denied that they were "currently promoting" HempAmericana, and denied, "at any time while selling the securities on deposit in the account," having any "plan to promote or engage a third party to promote . . . the issuer's securities."

85.     Dillon also directly denied involvement in stock promotion when confronted by Broker-Dealer A's compliance personnel.

86.     Those false statements were critical to enabling the GPL Defendants to deposit and sell stock, thereby achieving the objective of their scalping scheme.

## V.     HEMPAMERICANA AND ROSILLO FILED FALSE REG. A OFFERING CIRCULARS WITH THE COMMISSION

87.     Starting in July 2017, HempAmericana had four qualified Reg. A offerings.

88.     In connection with the four Reg. A offerings, Rosillo signed and certified HempAmericana filings with the Commission.

89.     Each offering circular filed with the Commission in connection with the four Reg. A offerings represented that HempAmericana planned to use the offering proceeds "to grow its business."

90.     A table in the offering circular estimated how HempAmericana planned to allocate offering proceeds, including the following categories: "Marketing and marketing staff," "Sales and sales staff," "Inventory," "Distribution/production warehouse," "Factory, Equipment and Machinery," "Other staff and operating costs," and "Investments in hemp-related going concerns (including licenses)."

91.     A further explanation for the Marketing and Sales categories, for which a combined total of up to twenty percent of expected proceeds were allocated, provided:

Marketing and Sales will largely be related to the hiring and payment of a human sales team as well as advertising costs associated with online advertising platforms such as Google Adwords (sic) and Facebook, as well as paying directly to websites per their ad and affiliate programs.

92.     HempAmericana never disclosed that, in fact, it intended to use a substantial portion of the stock sale proceeds – ultimately approximately twenty-nine percent – toward promoting the stock for unlawful purposes instead of growing or marketing the company's products and business.

### FIRST CLAIM FOR RELIEF
### Violations of Exchange Act Section 15(a)
### (GPL Defendants)

93.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 92.

94.     GPL Ventures and GPL Management, persons other than natural persons, and Dillon and Panait, natural persons not associated with a broker or dealer which is a person other than a natural person, made use of the mails or any means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, any security without being registered with the Commission as a broker-dealer.

95.     By reason of the foregoing, the GPL Defendants violated, and, unless enjoined, will again violate Exchange Act Section 15(a) [15 U.S.C. § 78o(a)].

### SECOND CLAIM FOR RELIEF
### Control Person Liability for Violations of Exchange Act Section 15(a)
### (Dillon and Panait)

96.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 92.

97.     As alleged above, GPL Ventures and GPL Management violated Exchange Act Section 15(a) [15 U.S.C. § 78o(a)].

98.     At all relevant times, Dillon and Panait controlled GPL Ventures and GPL Management and were culpable participants in GPL Ventures' and GPL Management's violations of Exchange Act Section 15(a) [15 U.S.C. § 78o(a)].

99.     By reason of the foregoing, Dillon and Panait are liable as controlling persons pursuant to Exchange Act Section 20(a) [15 U.S.C. § 78t(a)] for GPL Ventures' and GPL Management's violations of Exchange Act Section 15(a) [15 U.S.C. § 78o(a)].

### THIRD CLAIM FOR RELIEF
### Violations of Securities Act Section 17(a)
### (GPL Defendants, HempAmericana, and Rosillo)

100.    The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 92.

101.    Defendants GPL Ventures, GPL Management, Dillon, Panait, HempAmericana, and Rosillo, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly have employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently have obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

102.    By reason of the foregoing, Defendants GPL Ventures, GPL Management, Dillon, Panait, HempAmericana, and Rosillo, directly or indirectly, have violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

**FOURTH CLAIM FOR RELIEF**
**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**
**(GPL Defendants, HempAmericana, and Rosillo)**

103.    The Commission re-alleges and incorporates by reference here the allegations in

paragraphs 1 through 92.

104.    Defendants GPL Ventures, GPL Management, Dillon, Panait, HempAmericana,

and Rosillo, directly or indirectly, singly or in concert, in connection with the purchase or sale of

securities and by the use of means or instrumentalities of interstate commerce, or the mails, or

the facilities of a national securities exchange, knowingly or recklessly have (i) employed one or

more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a

material fact or omitted to state one or more material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading,

and/or (iii) engaged in one or more acts, practices, or courses of business which operated or

would operate as a fraud or deceit upon other persons.

105.    By reason of the foregoing, Defendants GPL Ventures, GPL Management, Dillon,

Panait, HempAmericana, and Rosillo, directly or indirectly, singly or in concert, have violated

and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and

Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**FIFTH CLAIM FOR RELIEF**
**Violations of Securities Act Sections 17(a)(1) and (3)**
**(Seaside and Adams)**

106.    The Commission re-alleges and incorporates by reference here the allegations in

paragraphs 1 through 92.

107.    Defendants Seaside and Adams, directly or indirectly, singly or in concert, in the

offer or sale of securities and by the use of the means or instruments of transportation or

communication in interstate commerce or the mails, (1) knowingly or recklessly have employed one or more devices, schemes or artifices to defraud, and/or (2) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

108.    By reason of the foregoing, Defendants Seaside and Adams, directly or indirectly, have violated and, unless enjoined, will again violate Securities Act Sections 17(a)(1) and (3) [15 U.S.C. §§ 77q(a)(1) and (3)].

## SIXTH CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rules 10b-5(a) and (c) Thereunder
### (Seaside and Adams)

109.    The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 92.

110.    Defendants Seaside and Adams, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly have (i) employed one or more devices, schemes, or artifices to defraud, and/or (ii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

111.    By reason of the foregoing, Defendants Seaside and Adams, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter:

## I.

An Order temporarily and preliminarily, and a Final Judgment permanently, restraining and enjoining the GPL Defendants, and each of their respective agents, servants, employees, attorneys and other persons in active concert or participation with each of them who receive actual notice of the injunction by personal service or otherwise, from any ongoing and future violations of Exchange Act Section 15(a) [15 U.S.C. § 78o(a)];

## II.

An Order directing the GPL Defendants, and each of their financial and brokerage institutions, agents, servants, employees attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of such Order by personal service, facsimile service, or otherwise, to hold and retain within their control, and otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds, or other property (including money, real or personal property, securities, commodities, choses in action or other property of any kind whatsoever) of, held by, or under the control of the GPL Defendants, whether held in their names or for their direct or indirect beneficial interest wherever situated;

## III.

An Order requiring the GPL Defendants to repatriate funds and other assets now located outside the United States;

## IV.

An Order directing GPL Ventures and GPL Management to file with this Court and serve upon the Commission, within three (3) business days, or within such extension of time as the

Commission staff agrees to, sworn accountings, signed by Dillon and Panait, and under penalty of perjury, setting forth:

        (1)     All assets, liabilities and property currently held, directly or indirectly, by or for the benefit of each such Defendant, including, without limitation, bank accounts, brokerage accounts, investments, business interests, loans, lines of credit, and real and personal property wherever situated, describing each asset and liability, its current location and amount;

        (2)     All money, property, assets and income received by each such Defendant for its direct or indirect benefit, at any time from January 1, 2017, through the date of such accounting, describing the source, amount, disposition and current location of each of the items listed;

        (3)     The names and last known addresses of all bailees, debtors, and other persons and entities that currently are holding the assets, funds or property of each such Defendant; and

        (4)     All assets, funds, securities, and real or personal property received by each such Defendant, or any other person controlled by them, from persons who provided money to such Defendants in connection with the offer, purchase or sale of securities, from January 1, 2017, to the date of the accounting, and the disposition of such assets, funds, securities, real or personal property;

## V.

An Order providing that the Commission may take expedited discovery;

## VI.

An Order temporarily and preliminarily enjoining and restraining the GPL Defendants,

and any person or entity acting at their direction or on their behalf, from destroying, altering, concealing or otherwise interfering with the access of the Commission to relevant documents;

## VII.

An Order providing that the Commission may effect service by alternative means, including service on the GPL Defendants or their counsel by email;

## VIII.

A Final Judgment permanently enjoining the GPL Defendants, HempAmericana, and Rosillo, and their agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. § 77q(a)], and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

## IX.

A Final Judgment permanently enjoining Seaside and Adams, and t their agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Sections 17(a)(1) and (3) [15 U.S.C. §§ 77q(a)(1) and (3)], and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(b)(a) and (c)];

## X.

A Final Judgment ordering Defendants to disgorge all ill-gotten gains and/or unjust enrichment received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

## XI.

A Final Judgment ordering Defendants to pay civil monetary penalties under Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

## XII.

A Final Judgment permanently prohibiting Rosillo and Adams from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78*l*] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)];

## XIII.

A Final Judgment permanently prohibiting the GPL Defendants, Rosillo, Seaside, and Adams from participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, under Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and

## XIV.

Granting any other and further relief this Court may deem just and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.


Dated: New York, New York
      August 13, 2021

RICHARD BEST   Digitally signed by RICHARD BEST
                    Date: 2021.08.13 07:52:08 -04'00'
_____
RICHARD R. BEST
REGIONAL DIRECTOR
Sanjay Wadhwa
Adam S. Grace
Paul G. Gizzi
Brenda Wai Ming Chang
John C. Lehmann
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
212-336-0077 (Gizzi)
Email: gizzip@sec.gov